Filed 3/29/22  Conservatorship of S.C. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| CONSERVATORSHIP OF the Person of S.C. | 2d Civ. No. B313386 (Super. Ct. No. PR040403) (San Luis Obispo County) |
| ———————————————— | |
| PUBLIC GUARDIAN OF THE COUNTY OF SAN LUIS OBISPO, as Conservator, etc., | |
|     Petitioner and Respondent, | |
| v. | |
| S.C., | |
|     Objector and Appellant. | |

S.C. appeals the trial court's order reappointing a conservator of her person pursuant to the Lanterman-Petris-Short Act (LPS Act).  (Welf. & Inst. Code,[1] § 5000 et seq.)

———————————

[1] All statutory references are to the Welfare and Institutions Code.

Appellant contends the evidence is insufficient to support the order and that the court applied the incorrect burden of proof in making its findings. We affirm.

## FACTS AND PROCEDURAL HISTORY

Appellant is a 57-year-old woman with a longstanding diagnosis of schizoaffective disorder bipolar type. In June 2004, the San Luis Obispo County Public Guardian was appointed as the conservator of appellant's person. In January 2021, the San Luis Obispo County Public Guardian filed a petition for reappointment of the conservator under section 5361. The declaration submitted in support of the petition, signed by Drs. Matthew Lilly and Ricki-Leigh Brampton, stated among other things that appellant's mental disorder rendered her unable to meet her basic needs for food, clothing and shelter because "she lacks the organization of thought [and] the appropriate insight [and] sound judgment needed to develop and execute a viable self-care plan. [She also has u]nrealistic expectations of 3rd party support [and] poor understanding of subsidized housing options." Appellant waived her right to a jury trial.

Dr. Rose Drago, a psychiatrist, offered her expert opinion that appellant was gravely disabled as a result of a mental disorder. In forming her opinion Dr. Drago reviewed and relied on the declaration of Drs. Lilly and Brampton, appellant's records from Nueva Vista in Monterey County (where appellant has been living since 2012), and the original conservatorship investigative report. Dr. Drago had also met with appellant on numerous occasions regarding the renewals of her conservatorship and last met with her the day prior to the doctor's testimony.

When Dr. Drago last met with appellant she did not exhibit any overt symptoms of her mental disorder although she usually exhibits mild symptoms on a daily basis. Appellant is prescribed

2

antipsychotic and antianxiety medications and is aware that she needs to take the medication, but hoped to eventually decrease the dosage. On some occasions appellant was not committed to taking her medications and was often late for her morning dose. Appellant also had some problems participating in her treatment and was not seeing her individual therapist because the therapist made her feel uncomfortable.

When asked about her plans for self-care if her conservatorship was terminated, appellant told Dr. Drago she intended to rely on Section 8 housing assistance to rent a studio at an Extended Stay America motel in Monterey County, have her care transferred to another provider, shop at Walmart, and use the bus for transportation. According to Dr. Drago, these plans were "vague" and were "pretty much verbatim what her plans were last year" when her prior period of conservatorship was about to expire. Appellant told the doctor she "qualifies" for Section 8 assistance but was unable to produce a voucher. To Dr. Drago's knowledge, Extended Stay America did not accept Section 8 vouchers. Appellant told the doctor she would provide her with the necessary documents in court but she did not do so. Appellant did not have an alternative plan if she could not rent a studio at Extended Stay America.

Although appellant's husband A.C. submitted a declaration regarding his willingness to provide appellant with third-party assistance if her conservatorship were terminated, Dr. Drago opined that his offer of such assistance did not change her opinion that appellant was currently gravely disabled. A.C. and appellant had been married for 25 years but had been separated for the past several years. After outlining appellant's plans to stay in Monterey County, A.C., who lives in San Luis Obispo County, stated that he agreed to (1) "[a]ssist [appellant] in

3

arranging to move within the Morgan Hill area, by making whatever phone calls might be necessary to assist in bringing this about;" and (2) "[t]o follow up with both [appellant] and staff to make sure she has followed through with appropriate treatment." Appellant's medical records indicate that she receives approximately $1,180 in monthly income from Social Security. According to A.C., appellant's rent at Extended Stay America would be $899 a month. Dr. Drago concluded that A.C.'s declaration did not constitute a valid offer of third party assistance because "[i]t really isn't offering . . . what's normally considered support." The doctor further opined that appellant required the supervision of a treatment facility to ensure she takes her medication as prescribed.

At the conclusion of Dr. Drago's testimony, the trial court continued the matter to provide appellant additional time to provide more specific information regarding her plan for self-care upon the termination of her conservatorship. At the continued hearing, Kelli Daher testified that she had been working with appellant since February 2021 on behavioral, coping, and independent living skills. Daher concluded that appellant's skills were lacking in terms of her ability to be on her own in the community, including poor time management and organizational skills. Daher expressed concerns about appellant's plan for housing because appellant could not provide details or information on the resources she believed were available to her.

Appellant testified at the hearing and disputed that she had poor organizational skills. She planned to finish school and had several job offers. Appellant claimed that she had been told that she qualified for Section 8 housing assistance and that Extended Stay America accepted Section 8 vouchers. Although she wanted to stay in Monterey County, she expected to receive

4

third party assistance from A.C. and planned to apply for Social Security and Medicare.

The trial court found beyond a reasonable doubt that appellant was gravely disabled within the meaning of the LPS Act. The court acknowledged that appellant was doing "quite well" and that "there are a lot of factors that weigh in [her] favor." Although appellant had "a pretty good plan," it was "somewhat [in]consistent with [Daher's] testimony and that there is not enough structure and organization to that plan. . . . [I]f I were to . . . find in your favor today, you don't have a voucher in hand to go have a place to stay. And that is just one and perhaps the most dominant example of the inability to have set a concrete example to forward. I admire the steps that you have taken. I think you are close." The court urged appellant to "regroup" and "work with support of staff to develop more organization and to be able to . . . not just tell me, but show me. Get that voucher. Have the guy from . . . the place you want to live . . . come in as a witness. I'm happy to consider anything." The court also found that A.C.'s offer of third-party assistance did not "fit[] the contemplation of the case law associated with third-party assistance in a meaningful way that I can discharge the LPS conservatorship at this time." Accordingly, the court reappointed the Public Guardian as appellant's conservator for a period of one year.

## DISCUSSION

Appellant contends the evidence is insufficient to support the court's finding that she is gravely disabled. We disagree.

To establish a conservatorship under the LPS Act, the public guardian must prove the proposed conservatee is gravely disabled beyond a reasonable doubt. (§ 5350; *Conservatorship of Smith* (1986) 187 Cal.App.3d 903, 909.) "[T]o establish that a

5

person is gravely disabled, the evidence must support an objective finding that the person, due to mental disorder, is incapacitated or rendered unable to carry out the transactions necessary for survival or otherwise provide for his or her basic needs of food, clothing, or shelter." (*Conservatorship of Carol K.* (2010) 188 Cal.App.4th 123, 134; see § 5008, subd. (h)(1)(A).)

"In reviewing a conservatorship, we apply the substantial evidence standard to determine whether the record supports a finding of grave disability. The testimony of one witness may be sufficient to support such a finding. [Citation.] We review the record as a whole in the light most favorable to the trial court judgment to determine whether it discloses substantial evidence. Substantial evidence, which is evidence that is reasonable, credible, and of solid value, also includes circumstantial evidence. [Citation.]" (*Conservatorship of Carol K.*, *supra*, 188 Cal.App.4th at p. 134.) "Substantial evidence includes circumstantial evidence and the reasonable inferences flowing therefrom. [Citation.]" (*Conservatorship of Walker* (1989) 206 Cal.App.3d 1572, 1577.)

Substantial evidence supports the finding that appellant is gravely disabled. After evaluating appellant and reviewing her records, Dr. Drago concluded she was gravely disabled because her mental disorder rendered her unable to provide for her basic needs. The doctor also opined that appellant required the supervision of a treatment facility to ensure she takes her prescribed medication. Appellant provided no documentary evidence supporting her plan for shelter and her testimony contradicted A.C.'s statements regarding her finances and the cost of staying at Extended Stay America. She also spoke to Dr. Drago about her plans to transfer her mental health care to alternative providers, but could not remember the names or

6

locations of these alternative providers and said she planned to see a neurologist rather than a psychiatrist. Moreover, appellant did not have any alternative plan for her shelter and would not consider moving back to San Luis Obispo County. Appellant's therapist noted that appellant's "disorganized thoughts create great difficulty in her organization skills and [she] becomes confused about processes." The court implicitly found Dr. Drago and Daher's testimony more reliable and credible and we have no authority to disturb that finding. (See *Conservatorship of S.A.* (2020) 57 Cal.App.5th 48, 55.)

Substantial evidence also supports the finding that appellant's husband A.C. did not make a sufficient offer of third-party assistance as contemplated in section 5350, subdivision (e)(1).[2] A.C., who lives in San Luis Obispo County, merely indicated that he supported appellant's plan and would make phone calls and follow up with her.

Appellant notes that the court told appellant she was doing "quite well," that "a lot of factors" weighed in her favor, that she "ha[d] a pretty good plan," and that she was "close" to establishing her goal. Appellant further notes that the court urged appellant to seek appellate review of its ruling. Contrary to appellant's claim, these words of encouragement do not indicate that the court expressed a doubt regarding whether appellant was currently gravely disabled. Moreover, appellant fails to persuade us that the court applied the wrong standard of

---

[2] Subdivision (e)(1) of section 5350 states in pertinent part that "a person is not 'gravely disabled' if that person can survive safely without involuntary detention with the help of responsible family, friends, or others who are both willing and able to help provide for the person's basis personal needs for food, clothing, or shelter."

review or erroneously placed the burden of appellant to prove she was not gravely disabled because she had a viable plan for shelter.

The question of grave disability cannot be considered in a vacuum but rather "in the context of suitable alternatives, upon a consideration of the willingness and capability of the proposed conservatee to voluntarily accept treatment and upon consideration of whether the nondangerous individual is capable of surviving safely in freedom by [herself] or with the help of willing and responsible family members, friends or other third parties. [Citation.]" (*Conservatorship of Davis* (1981) 124 Cal.App.3d 313, 325, disapproved on another ground in *Conservatorship of K.P.* (2021) 11 Cal.5th 695, 717.) Appellant's inability to provide a plan for her shelter, her contradictory statements regarding that plan, and her stated confusion regarding her needs for continued mental health treatment constitute sufficient evidence to support the finding that she is gravely disabled.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

PERREN, J.

We concur:

YEGAN, Acting P.J.          TANGEMAN, J.

8

Linda D. Hurst, Judge

Superior Court County of San Luis Obispo

_____


Gerald J. Miller, under appointment by the Court of Appeal, for Conservatee and Appellant.

Rita L. Neal, County Counsel, Chelsea K. Kuhns, Deputy County Counsel, for Conservator and Respondent.